**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Anthony Castro, | No. CV-23-01865-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Adrian Fontes, et al., | |
| Defendants. | |

This case is one of at least 27 filed across the country by Plaintiff John Anthony Castro, ostensibly a candidate for the Republican Party's 2024 nomination for President of the United States, seeking to prevent former President Donald J. Trump from appearing on the ballot in next year's primary elections. *See* KC Downey, *Judge dismisses candidate's lawsuit to keep Trump off New Hampshire primary ballot*, WMUR9 (Oct. 30, 2023), available at https://www.wmur.com/amp/article/new-hampshire-donald-trump-ballot-lawsuit-dismiss/45682757.[1] Already, four district courts have dismissed Castro's cases for lack of standing. *See Castro v. Sec. of State Gregg Amore*, C.A. No. 23-405 JJM, 2023 WL 8191835, at *1 (D.R.I. Nov. 27, 2023); *Castro v. New Hampshire Sec. of State*, Civil No. 23-cv-416-JL, 2023 WL 7110390, at *6 (D.N.H. Oct. 27, 2023), aff'd, *Castro v. Scanlan*, No. 23-1902, 2023 WL 8078010 (1st Cir. Nov. 21, 2023); *Castro v. Trump*, Case No. 23-

---

[1] Ordinarily, the Court would not cite to media articles, but Castro directed the Court to this article (and others) in a November 11, 2023 affidavit, and invited the Court to consider this media coverage when assessing whether he has standing. (Doc. 53.)

80015-CIV-CANNON, 2023 WL 7093129, at *1 (S.D. Fla. June 26, 2023); *Castro v. FEC*, Civil Action No.: 22-2176 (RC), 2022 WL 17976630, at *3 (D.D.C. Dec. 6, 2022). For reasons explained below, this Court becomes the fifth.

**I.     Background**

On September 5, 2023, Castro filed this action to enjoin Arizona Secretary of State Adrian Fontes from including Trump on Arizona's Presidential Preference Election ballot. (Doc. 1 ¶ 14.) Castro claims he is running for the Republican Party's nomination for President. (*Id.* ¶ 3.) He purports to bring an implied private cause of action under Section 3 of the Fourteenth Amendment to the United States Constitution, which states:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

(*Id.* ¶ 7; Doc. 72 at 9-11.)[2] Castro claims Section 3 disqualifies Trump from holding the

---

[2] Whether such an implied cause of action exists is debatable. Several district courts have concluded that Section 3 of the Fourteenth Amendment creates no private cause of action. *See Castro v. Weber*, No. 2:23-cv-02172 DAD AC (PS), 2023 WL 6931322, at *2 (E.D. Cal. Oct. 19, 2023) ("[Section] 3 of the Fourteenth Amendment does not give plaintiff a private right of action to bring this case."); *Rosberg v. Johnson*, No. 8:22-cv-384, 2023 WL 3600895, at *3 (D. Neb. May 23, 2023) ("[Section] 3 of the Fourteenth Amendment does not provide any private right of action to Plaintiff[.]"); *Stencil v. Johnson*, 605 F.Supp.3d 1109, 1115 (E.D. Wis. 2022) ("Although the plaintiffs seek a ruling on a question of federal law—whether the defendants are ineligible for membership in the 118th Congress by virtue of Section 3 of the Fourteenth Amendment—that question could only be raised against the defendants in their capacities as candidates for office in a proceeding brought under state ballot-access laws."); *Secor v. Oklahoma*, No. 16-CV-85-JED-PJC, 2016 WL 6156316, at *4 (N.D. OK Oct. 21, 2016) (finding Section 3 of the Fourteenth Amendment does "not provide any private right of action"). Castro cites no persuasive authority to the contrary.

Notably, Arizona has a state ballot-access law that allows "[a]ny elector [to] challenge a candidate for any reason relating to qualifications for the office sought as prescribed by law[.]" A.R.S. § 16-351(B). The Arizona Supreme Court recently concluded that § 16-351(B) "is not the proper proceeding to initiate a . . . challenge" under Section 3 of the Fourteenth Amendment. *Hansen v. Finchem*, No. CV-22-0099-AP/EL, 2022 WL 1468157, at *1 (Ariz. May 9, 2022). *Hansen*, however, is an unpublished decision order that does not qualify as binding precedent under Arizona Supreme Court Rule 111(c). What's more, the decision appears to have been based on the belief that Section 3 of the Fourteenth Amendment is a *dis*qualification from holding office, rather than a qualification for holding one, and that there is a material difference between the two. *Id.* For reasons

office of President because Trump gave aid and comfort to insurrectionists on January 6, 2021. (Doc. 1 ¶¶ 8-12.) Castro alleges that, as a fellow candidate for the Republican Party's presidential nomination, he will suffer "competitive injury in the form of a diminution of votes and/or fundraising" if Secretary Fontes allows an ineligible candidate like Trump to appear on Arizona's Presidential Preference Election ballot. (*Id.* ¶¶ 7, 13, 18, 20-21.)

On September 18, 2023, Castro filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction enjoining Secretary Fontes from accepting any ballot access paperwork Trump submits. (Doc. 11.) Castro also requested that the Court expedite a hearing on his preliminary injunction motion and consolidate that hearing with the final trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). The Court denied Castro's motion for a TRO and set a briefing and hearing schedule on his request for a preliminary injunction. (Doc. 12; Doc. 24; Doc. 25.) Subsequently, the parties stipulated that Secretary Fontes would not participate substantively in this matter because Castro named Secretary Fontes as a nominal defendant for the sole purpose of effectuating any relief the Court might order (Doc. 33; Doc. 37; Doc. 38; Doc. 44; Doc. 45); Trump filed a motion to dismiss Castro's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted (Doc. 30); and the Court granted a motion by the Arizona Republican Party ("ARP") to intervene, the ARP filed a third-party complaint against Castro, and Castro moved to dismiss that third-party complaint (Doc. 26; Doc. 40; Doc. 43; Doc. 46).

---

discussed by Judge Julius N. Richardson in his concurring opinion in *Cawthorn v. Amalfi*, there are compelling reasons to conclude that Section 3 of the Fourteenth Amendment is a qualification for office, similar to age and residency. 35 F.4th 245, 275-282 (4th Cir. May 24, 2022) (Richardson, J. concurring in the judgment). The Arizona Supreme Court did not have the benefit of Judge Richardson's opinion at the time it decided *Hansen*. But, considering (1) states may enact and enforce neutral ballot-access laws designed to keep ineligible candidates off the ballot, *see Lindsay v. Bowen*, 750 F.3d 1061, 1063-65 (9th Cir. 2014); *Hassan v. Colorado*, 495 Fed. App'x 947, 948 (10th Cir. 2012), (2) the plain language of § 16-351(B) does not distinguish between qualifications prescribed by state versus federal law, or between qualifications that are easy to determine (like age) versus those that might be more evidentiarily complex, and (3) in Arizona "[t]he proper method of challenging the inclusion of a candidate's name on election ballots is through an action for injunction" under §16-351, *Bearup v. Voss*, 690 P.2d 790, 791 (Ariz. Ct. App. 1984), the Arizona Supreme Court might reasonably reach a different outcome were § 16-351(B) used to challenge Trump's qualifications for office.

The Court held a telephonic hearing on all three motions on November 14, 2023. (Doc. 61.) At Castro's request, and with the consent of all parties, the Court consolidated this hearing with the final trial on the merits pursuant to Rule 65(a)(2). (Doc. 11; Doc. 32; Doc. 48.) Further, the parties agreed that no evidence would be presented during this hearing. Instead, the hearing consisted of oral argument on the parties' briefs and any admissible documentary evidence submitted with them. (Doc. 24.) During the hearing, counsel for the ARP confirmed that, if the Court denies Castro's requested relief, either by granting Trump's motion to dismiss or by denying Castro's motion for a preliminary injunction on some other basis, the ARP's third-party complaint against Castro could be dismissed as moot. (Doc. 72 at 62-63.)

On December 4, 2023, Castro filed a motion for leave to amend his verified complaint, largely to supplement his standing-related allegations. (Doc. 73.)

After careful consideration, the Court finds that this case must be dismissed for lack of subject-matter jurisdiction because Castro lacks standing to bring his claim. This holds true even with respect to Castro's proposed amended verified complaint. Because this conclusion moots Castro's motion for a preliminary injunction and the ARP's third-party complaint, the balance of this order is devoted to the standing question and Castro's motion for leave to amend.

## II.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) motion may challenge subject-matter jurisdiction facially or factually. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "When a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject-matter jurisdiction, the challenge is a facial one." *Taylor v. City of Flagstaff*, No. CV-19-08176-PCT-MTL, 2019 WL 5066827, at *2 (D. Ariz. Oct. 9, 2019) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). On a facial challenge, the Court accepts the complaint's material factual allegations (but not legal

conclusions) as true. *White*, 227 F.3d at 1242. In a factual challenge, the defendant disputes the truth of the complaint's allegations, which otherwise would confer federal jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. On a factual challenge, the Court may consider evidence beyond the complaint. *White*, 227 F.3d at 1242. Even in the absence of a Rule 12(b)(1) motion, however, "federal courts are required *sua sponte* to examine jurisdictional issues such as standing." *B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). "The party asserting jurisdiction has the burden of proof to show that the court has subject matter jurisdiction." *Humphreys & Partners Architects LP v. Atl. Dev. & Invs. Inc.*, No. CV-14-01514-PHX-JJT, 2016 WL 1535175, at *2 (D. Ariz. Apr. 15, 2016) (citing *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)). The Court must dismiss an action for lack of subject-matter jurisdiction if it determines that the plaintiff lacks standing. *Id.* (citing *Ervine v. Desert View Reg. Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014)).

**B. Discussion**

Trump brings a facial challenge to the Court's subject-matter jurisdiction, arguing that the allegations in Castro's verified complaint do not plausibly establish standing. (Doc. 30 at 3-9; Doc. 47 at 2-5.) Such a challenge ordinarily would limit the Court to the allegations in the verified complaint.[3] Castro, however, urges the Court to consider evidentiary materials he submitted on a rolling basis between October 12, 2023, and November 16, 2023 (two days after the hearing). (Doc. 28; Doc. 53; Doc. 60; Doc. 65.) The Court will examine standing based both on the verified complaint's factual allegations and on the extra-pleading evidentiary materials Castro has submitted.

The Constitution limits federal court jurisdiction to "Cases" and "Controversies."

---

[3] Trump cites to Castro's campaign finance reports filed with the Federal Election Commission ("FEC"). (Doc. 30 at 7; Doc. 47 at 3 n.1.) Though these reports are not attached to Castro's verified complaint, this information falls within the scope of a facial challenge because Castro's verified complaint refers to his status as an FEC-registered candidate, provides his FEC candidate identification number, and relies on his FEC registration to support his standing allegations. (Doc. 1 at 18.) The Court "may take judicial notice of documents referenced in the complaint and matters in the public record." *Wittbecker v. Cupertino Electric, Inc.*, Case No. 20-cv-06217-BLF, 2021 WL 1400959, at *3 (N.D. Cal. Apr. 14, 2021).

U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To have standing, a plaintiff must have suffered an injury in fact—meaning one that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical—caused by the challenged conduct and redressable by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

Where, as here, the Court is asked to weigh in on important and novel constitutional issues, "the requirement of concrete injury . . . serves the function of insuring that such adjudication does not take place unnecessarily." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 222 (1974). "To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing 'government by injunction.'" *Id.* at 221.

Castro alleges that he "will suffer a concrete competitive injury" in the form of "a diminution of votes and/or fundraising" if Trump appears on Arizona's Presidential Preference Election ballot. (Doc. 1 ¶ 21.) "[A] candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." *Drake v. Obama*, 664 F.3d 774, 782 (9th Cir. 2011) (quoting *Hollander v. McCain*, 566 F.Supp.2d 63, 68 (D.N.H. 2008)). Because the injury unpinning competitive standing is the potential loss of an election, however, the plaintiff must genuinely be competing with the allegedly ineligible candidate. *See Grinols v. Electoral College*, No. 2:12-cv-02997-MCE-DAD, 2013 WL 2294885, at *8 (E.D. Cal. May 23, 2013). For example, a plaintiff cannot establish competitive standing merely by self-declaring as a write-in candidate,

even though write-in candidates theoretically compete with those whose names appear on the ballot. *Sibley v. Obama*, No. 12-5198, 2012 WL 6603088, at *1 (D.C. Cir. Dec. 6, 2012). If a cognizable injury could be manufactured so easily, then "any citizen could obtain standing (in violation of Article III of the U.S. Constitution) by merely 'self-declaring[.]'" *Id.*

The facts as they existed at the time Castro filed his verified complaint do not show that Castro is truly competing with Trump or will be injured in any concrete way by Trump's appearance on Arizona's Presidential Preference Election ballot. Castro alleges only that he is registered with the FEC as a Republican primary presidential candidate and that he intends to appear on Arizona's Presidential Preference Election ballot. (Doc. 1 at 18.) Castro alleges no facts demonstrating a campaign presence in Arizona or that he is genuinely competing with Trump for contributions or votes in the state. To the contrary, according to the FEC's website, between January 1, 2023, and September 30, 2023, Castro's campaign reported a total of $678.00 in contributions ($677.00 of which was donated by Castro himself; the other $1.00 is unaccounted for) and $0.00 in expenditures. *See* Financial Summary for John Anthony Castro, available at https://www.fec.gov/data/candidate/P40007312/?cycle=2024&election_full=true#cash-summary (last visited December 4, 2023). Based on nearly identical factual allegations, the First Circuit Court of Appeals recently affirmed the United States District Court for the District of New Hampshire's determination that Castro had not alleged a concrete competitive injury. *Castro*, 2023 WL 8078010, at *8-9. The Court largely agrees with the First Circuit's analysis.

The Court reaches the same conclusion accounting for post-complaint developments. On October 12, 2023, Castro filed an "Affidavit of Arizona Ballot Access Qualification," averring that he filed declarations of candidacy in Nevada and New Hampshire, rendering him eligible to appear on Arizona's Presidential Preference Election ballot pursuant to A.R.S. § 16-242(E). (Doc. 28.) On November 1, 2023, Castro filed an "Affidavit of Candidacy and Media Coverage," in which he claims that he has incurred

unidentified and unquantified "expenses associated with campaigning in this state, launched [his] own online show called the Truth Addict, and [has] digitally targeted voters in this state," and provides links to a selection of online articles that he claims are about his campaign, but which actually are about his serial litigation. (Doc. 53.) On November 14, 2023, Castro submitted to the Court a copy of the ballot access paperwork he filed with Secretary Fontes' office. (Doc. 60.) And finally, on November 16, 2023, Castro filed an "Affidavit of Ballot Placement and Arizona Expenses," elaborating on the campaign expenses he has incurred. (Doc. 65.)

Although this evidence shows Castro's name likely will appear on the Republican ballot in Arizona's Presidential Preference Election, it does not convince the Court that Castro is genuinely competing with Trump for votes or contributions, or that he has any chance or intent to prevail in that election. Castro offers no evidence that he has Arizona supporters, that he has received contributions from any voter anywhere in the country, or that he would gain support or contributions if Trump could not appear on the ballot. *See Castro*, 2023 WL 7110390, at *5 ("Castro has not provided any evidence suggesting that he has voters or contributors in New Hampshire or elsewhere, or that he will benefit from voter or contributor defections from Trump to himself."), aff'd, 2023 WL 8078010, at *11 ("Thus, on this record, any claim that the former President's presence on the ballot in the contest at issue will diminish Castro's votes or contributions is simply too speculative to credit, even allowing for the probabilistic nature of a claim of competitive injury. And we see no reason to conclude that a claim of political competitive injury that is purely conjectural fares any better than a purely conjectural claim of injury otherwise does.").

Instead, this evidence shows that Castro is attempting to manufacture a competitive injury solely for purposes of pursuing litigation. Castro candidly admitted as much to the Associated Press in an article he invited the Court to consider: "I'm not going to lie and pretend my candidacy is anything more than trying to enforce the United States Constitution, and that's what I'm here to do[.]" Holly Ramer, *New Hampshire's presidential primary filing period opens with candidates critical of Biden and Trump*, The

Associated Press (Oct. 11, 2023), available at https://apnews.com/article/new-hampshire-presidential-primary-2024-5bd66ceac3df40f3b0ec7676422f40bc. This statement aligns with Castro's representations to the United States District Court for the District of New Hampshire:

> [T]he evidence indicates that Castro is creating his own injury in order to manufacture standing to challenge Trump's eligibility to run for president. Indeed, by his own admission, Castro declared as a candidate and paid the filing fee to show the impermissibility of Trump's presidency. He asserts that one of his goals in the campaign is "to demonstrate his legal ingenuity, ability to effectuate a national litigation strategy with minimal resources (i.e. guerrilla lawfare), and demonstrate executive leadership capabilities."

*Castro*, 2023 WL 7110390, at *5.

"This practice of manufacturing standing to pursue a cause through litigation is not supported by the law." *Id.*; *see also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 422 (2013) ("[R]espondents lack Article III standing . . . because they cannot manufacture standing by incurring costs in anticipation of non-imminent harm."); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (noting that an organization "cannot manufacture [an] injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all"). Since losing his case in the District of New Hampshire, Castro has continued his transparent efforts to manufacture standing for the sole purpose of pursuing litigation by taking actions that attempt to remedy defects other courts identified as demonstrating his lack of standing. The clearest illustration of this strategy is Castro's affidavit here regarding his campaign expenses. On October 27, 2023—the same day the United States District Court for the District of New Hampshire dismissed his case for lack of standing—Castro's "campaign" purchased a digital billboard from OUTFRONT Media for $4,150.00. (Doc. 65-2.) The digital billboard is located in downtown Phoenix, roughly three blocks from the federal courthouse (a fact Castro took care to point out). (Doc. 65 at 1.) And it began running on November 13, 2023, the day before the hearing in this matter. If Article III's injury-in-fact requirement is to serve as a meaningful restraint on judicial

power, it must allow federal courts to recognize such shenanigans for what they are—an attempt to manufacture a controversy in order to pursue a political agenda through litigation.

Regardless of whether the Court focuses solely on the allegations in the verified complaint or also accounts for post-complaint developments and evidence outside the pleadings, Castro lacks standing to pursue his alleged implied private right of action because he will not suffer any real, genuine competitive injury by Trump's inclusion on Arizona's Presidential Preference Election ballot. And to be clear, the Court's conclusion is not based on political prognostication or a perception that Castro is unlikely to win. Instead, it is based on a finding that Castro is not truly running for office. His campaign's raison d'être is to contrive standing in order to pursue litigation to keep Trump off the ballot. Because Castro is not, in any real or concrete sense, competing with Trump for the Republican Party's presidential nomination, Trump's motion to dismiss for lack of subject-matter jurisdiction will be granted.

### III. Motion for Leave to Amend (Doc. 73)

In a last-ditch effort to resurrect this case after a series of other adverse rulings, Castro moves for leave to file an amended verified complaint.  Leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). When assessing whether to grant leave to amend, the Court considers factors such as: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Here, all four factors weigh against granting Castro's motion.

First, Castro is not genuinely competing for the Republican Party's presidential nomination; he is transparently and in bad faith attempting to manufacture an injury for the sole purpose of pursuing litigation, not to obtain redress for any concrete, non-speculative injury.

Second, Castro unduly delayed seeking leave to amend. Trump moved to dismiss Castro's verified complaint for lack of standing on October 13, 2023, yet Castro waited

until December 4, 2023—over three weeks *after* the consolidated hearing and final trial on the merits in this action—to seek leave to amend. And Castro's proposed amended verified complaint does little more than formally incorporate into the body of the pleading all the evidentiary material he has previously submitted to the Court in the form of affidavits and argument between October 12, 2023, and November 16, 2023. (*Compare* Doc. 73-1 at 9, 18, *with* Doc. 28; Doc. 53; Doc. 60; Doc. 65; Doc. 72 at 18-20.) Nothing prevented Castro from seeking leave earlier.

Third, granting leave to amend would unfairly prejudice the opposing parties. At Castro's request, the Court expedited the preliminary injunction hearing and consolidated it with the final trial on the merits. And Secretary Fontes informed the Court during a September 25, 2023 scheduling conference that he would need a decision from this Court by no later than December 11, 2023 to avoid disruptions to his office's operations. There simply is not time to allow Trump, the ARP, and Secretary Fontes to respond to an amended complaint and to hold a new hearing before December 11.

Finally, Castro's proposed amendments are futile. The beefed-up standing allegations in Castro's proposed verified amended complaint mirror the evidence previously submitted to the Court in the form of affidavits. The Court already has considered this information and concluded that it does not establish a genuine, concrete competitive injury. Accordingly, Castro's motion for leave to amend will be denied.

**IV.     Conclusion**

Castro is not genuinely competing with Trump for votes or contributions, and therefore is not suffering a concrete competitive injury. This is true even considering the allegations in Castro's proposed amended verified complaint. Because the Court lacks subject-matter jurisdiction over this case,

**IT IS ORDERED** as follows:

1. Trump's motion to dismiss for lack of subject-matter jurisdiction (Doc. 30) is **GRANTED**.

2. Castro's motion for leave to amend (Doc. 73) is **DENIED**.

3. The ARP's third-party complaint (Doc. 43) is **DISMISSED** as moot.

4. All remaining motions (Doc. 11 and Doc. 46) are **DENIED** as moot.

5. The Clerk of the Court is directed to terminate this case.

Dated this 4th day of December, 2023.

_____
Douglas L. Rayes
United States District Judge